James M. McDonnell, Esq. (Bar ID No. 030572001)
Eliza L. Lloyd, Esq. (Bar ID No. 111352014)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANTS

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBIN GALBRAITH,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>PERFORMANCE FOOD GROUP, INC., PERFORMANCE FOODSERVICE, PERFORMANCE FOOD SERVICE ROMA—NJ, STELLA WYATT, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>　　　　　　Defendants. | Civil Action No.<br><br><br><br><br>**NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, BURLINGTON COUNTY** |

TO:   William T. Walsh, Clerk of Court
　　　United States District Court for the District of New Jersey
　　　Mitchell H. Cohen Building & U.S. Courthouse
　　　4th & Cooper Streets
　　　Camden, New Jersey 08101

　　　Matthew A. Luber, Esq.
　　　McOmber, McOmber & Luber P.C.
　　　39 E. Main Street
　　　Marlton, New Jersey 08053
　　　Attorneys for Plaintiff

　　　Pursuant to 28 U.S.C. §§ 1331, 1441(b), and 1446, Defendants Performance Food Group, Inc., Performance FoodService, Performance Foodservice/ROMA – New Jersey ("improperly

pled as "Performance Food Service Roma—NJ"), and Stella Wyatt (collectively, "Defendants")[1], respectfully submit this Notice and Petition for Removal of a case from the Superior Court of New Jersey, Law Division, Burlington County, bearing Docket No. BUR-L-001354-20, and as grounds for removal states as follows:

1. Plaintiff, Robin Galbraith ("Plaintiff"), filed this civil action against Defendants in the Superior Court of New Jersey, Law Division, Burlington County, on July 8, 2020. A true and correct copy of Plaintiff's Complaint ("Complaint") is attached hereto as Exhibit A. The summons and complaint were the initial pleadings received by Defendants setting forth the claims upon which Plaintiff's action is based.

2. No proceedings have taken place in the state court action. Defendants have not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

3. This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446(b). Defendants effected removal within thirty (30) days of Plaintiff filing her Complaint, the paper from which it could first be ascertained that this action is removable. See 28 U.S.C. § 1446.

4. This action is subject to removal to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as it involves a controversy between citizens of different states:

    a. Plaintiff is, and has been, both upon the filing of the subject Complaint on July 8, 2020, and at the time of filing of this removal petition, a resident of the State of New Jersey. (See Exhibit A at ¶ 1).

---

[1] Defendants note that Performance FoodService and Performance Foodservice/ROMA – New Jersey ("improperly pled as "Performance Food Service Roma—NJ") are d/b/a's for Performance Food Group, Inc.

      b.      Performance Food Group, Inc., both upon the filing of the subject Complaint on July 8, 2020, and at the time of filing of this removal petition, is incorporated in the State of Colorado with its principal place of business located in Richmond, Virginia.

      c.      Performance Food Group, Inc. does business as Performance FoodService and Performance FoodService/ROMA-New Jersey.

      d.      Performance Foodservice/ROMA – New Jersey is a business designation belonging to Performance Food Group, Inc.

      e.      Stella Wyatt is, and has been, both upon the filing of the subject Complaint on July 8, 2020, and at the time of filing of this removal petition, a resident and citizen of the Commonwealth of Pennsylvania in Upper Chichester, Delaware County.

5.      As set forth in the Complaint, Plaintiff alleges the following causes of action: (1) disability discrimination/failure to accommodate/failure to engage in the interactive process in violation of the New Jersey Law Against Discrimination ("LAD") (Count One); and (2) retaliation in violation of the LAD (Count Two). While not specifically enumerated in Plaintiff's Complaint, the entire amount in controversy appears to contemplate an amount exceeding the sum of $75,000.

6.      Specifically, Plaintiff seeks to recover reinstatement of employment and all benefits, back pay and benefits, front pay and benefits, compensatory damages, consequential damages, reinstatement, punitive damages, interest and enhancements, expenses and costs of suit, attorneys' fees, and all other relief available under the LAD and that the Court deems equitable and just. (See Exhibit A at WHEREFORE clauses following Count Two).

7. Given the extensive relief requested by Plaintiff, Defendants submit that the amount in controversy exceeds the jurisdictional threshold set by 28 U.S.C. § 1332.

8. Because there is complete diversity between the parties and the amount in controversy is in excess of $75,000, this Court has original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332. This action is properly removable to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441(b), (c).

9. Defendants submit this notice and petition without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief may be granted.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1441(a).

11. Pursuant to 28 U.S.C. § 1446(d), Defendants have given written notice of the removal of this action to all adverse parties and have filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Burlington County.

WHEREFORE, Defendants respectfully request that the within action, now pending in the Superior Court of New Jersey, Law Division, Burlington County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

By: /s/ *James M. McDonnell*
James M. McDonnell
Eliza L. Lloyd
Attorneys for Defendants

Dated: August 7, 2020

# EXHIBIT A

Matthew A. Luber, Esq. – NJ ID # 017302010
  mal@njlegal.com
R. Armen McOmber, Esq. – NJ ID # 018251998
  ram@njlegal.com
Christian V. McOmber, Esq. – NJ ID # 012292010
  cvm@njlegal.com
Kelly E. Adler, Esq. - NJ ID # 01942008
  kea@njlegal.com
Peter M. Draper, Esq. – NJ ID # 012112012
  pmd@njlegal.com
Meghan A. Clearie, Esq. – NJ ID # 306642019
  mac@njlegal.com
McOmber McOmber & Luber, P.C.
39 E. Main Street
Marlton, NJ 08053
(856) 985-9800 Phone
(856) 263-2450 Fax
*Attorneys for Plaintiff Robin Galbraith*

| ROBIN GALBRAITH,<br><br>Plaintiff,<br><br>vs.<br><br>PERFORMANCE FOOD GROUP, INC., PERFORMANCE FOODSERVICE, PERFORMANCE FOOD SERVICE ROMA—NJ, STELLA WYATT, ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BURLINGTON COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY** |
|---|---|

Plaintiff Robin Galbraith ("Plaintiff") by way of Complaint against Defendant Performance Food Group, Inc., Performance Foodservice, Performance Food Service Roma—NJ, (collectively "Defendant PFG" or "Corporate Defendant"), Defendant Stella Wyatt ("Defendant Wyatt" or "Individual Defendant") (collectively "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is an individual residing in Hainesport, New Jersey, and at all times relevant hereto was employed by Defendant PFG as a Credit Analyst.

2. Defendant Performance Foodservice is a national corporation organized and existing under the law of the State of New Jersey with a principal place of business at 301 Herron Drive, Swedesboro, New Jersey 08085.

3. Defendant Performance Food Group, Inc., is a national corporation with a principal place of business at 12500 West Creek Parkway, Richmond, Virginia 23238.

4. Defendant Performance Foodservice Roma NJ is a national corporation organized and existing under the law of the State of New Jersey with a principal place of business at 301 Herron Drive, Swedesboro, New Jersey 08085.

5. At all times relevant hereto, Defendant PFG is an "employer" as defined under the New Jersey Law Against Discrimination *N.J.S.A.* 10:5-1 *et seq.* ("NJLAD").

6. Defendant Wyatt, at all times relevant hereto, is an individual resident of New Jersey and Vice President of Human Resources at Defendant PFG. This claim is brought against Defendant Wyatt in her individual capacity and/or as an agent or servant of Defendant PFG during the course of her employment.

7. Defendant ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Corporate Defendant, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-discrimination policies of Corporate Defendant, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiffs under any theory advanced therein.

8. Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-discrimination policies of Corporate Defendant and are currently unidentified individuals who may have liability for the damages suffered by Plaintiffs under any theory advanced herein.

9. At all relevant times, Defendants have been single and joint employers of Plaintiff and others similarly situated within the meaning of New Jersey State Law. In this regard, their operations are interrelated and unified, and they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices and decisions with respect to the employees.

## FACTS COMMON TO ALL CLAIMS

10. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

11. Defendant PFG food product delivery service serving over one hundred locations nationwide with approximately 25,000 employees.

12. Plaintiff commenced full time employment at Defendant PFG's New Jersey location in May 2015 as a Credit Analyst. For nearly five years, Plaintiff worked at Defendant PFG without issue. In fact, Plaintiff was the top performing employee in her department and, upon information and belief, the most highly compensated.

13. In September 2019, after months of persistent foot pain, Plaintiff advised Defendant PFG that she needed to take medical leave to undergo correction surgery. At the time Michele

Hoffman was the Vice President of Human Resources and was visibly frustrated with Plaintiff requesting medical leave and attempted to coerce her into suspending her leave because the company was "short staffed." Defendants openly discouraged Plaintiff from taking medical leave.

14. For medical reasons, Plaintiff could not delay surgery and, as a result, had no choice to take medical leave beginning September 6, 2019 with an approximate return to work date of December 6, 2019.

15. While Plaintiff was out on medical leave, Defendant Wyatt replaced Ms. Hoffman. Defendant Wyatt was apprised of Plaintiff's medical leave.

16. Unfortunately, in October 2019 Plaintiff had a bad fall. After three different trips to the hospital, Plaintiff was advised she suffered from spine and back nerve impingement. Plaintiff suffered numbness, muscle weakness, and sharp pains on a daily basis. Plaintiff's doctor advised her that this type of injury could last several months.

17. In November 2019, Plaintiff sought treatment from her doctor at North American Spine and Pain where she was advised that due to the severe nature of her injuries she would be out of work until June 2020.

18. Plaintiff's doctor recommended physical therapy because her range of motion was at approximately -30, which is very poor. Plaintiff received three epidural injections to help with her discomfort, but they did not help ease her pain. Therefore, at the recommendation of her doctor, Plaintiff started trigger point injections in efforts to Plaintiff's physical therapist advised her to start trigger point injections which would attempt to relieve the back of pain.

19. The combination of injuries had a large impact on Plaintiff's healing. Due to the terrible prognosis and extended treatment regimen, Plaintiff was fearful of how Defendants would

react to the news – indeed, their initial reaction to medical leave was to dissuade her from taking leave all together.

20.     Out of fear of discrimination and retaliation, Plaintiff requested an accommodation, with the approval of her doctor, that would allow her to work while recovering. To avoid aggravating her injuries Plaintiff's doctor recommended a remote work accommodation which would prevent Plaintiff from having to drive and sit for a long commute which would in turn put pressure on her foot, back and spine. Plaintiff, through her doctor, thus advised Defendants of this request.

21.     On December 26, 2019, Defendant PFG's third-party vendor for Disability and Leave Services, Sedgwick Claims Management Services, Inc. ("Sedgwick") requested additional information regarding the accommodation request, which Plaintiff promptly provided.

Sedgwick Claims Management Services, Inc.
PO Box 14830
Lexington, KY 40512-4830

sedgwick.

Phone: (855) 256-3221, option 2
Fax: (855) 259-2248
Web: www.claimlookup.com/pfg
Email: Disability@claimlookup.com

December 26, 2019

Robin Galbraith
1471 Maine Avenue
Hainesport, NJ 08036

RE:     Performance Food Group (PFG)
        Request to Correct Deficiency on ADA Information Request for Reasonable Accommodation
        Case Number: B911210692900004TC

Hello Robin:

We have received your provider request for information in reference to your reasonable accommodation request. In order to evaluate your request, clarification and/or additional information is needed as noted below. You have until January 8, 2020 to return the requested information.

Clarification Required (Reason(s) Provided Below)

1. The start and end dates when the patient may work from home are required:
   Start date: _____
   End date: _____

2. Was the patient incapacitated and unable to work prior to the above start date for work from home?
   Yes: _____
   No: _____

3. Please clarify the number of hours per day the patient is able to work from home (Question 13 notes 25 hours per day; 5 days per week):

4. An estimated end date for time off for follow-up appointments is required:
   End date: _____

5. An estimated start and end date for time off work for flare-ups is required:
   Start date: _____
   End date: _____

Please have your provider update the form, initial and date any changes, and then return by fax (855) 259-2248 no later than January 8, 2020. Failure to provide the requested information may impact your request for reasonable accommodation.

You can access your claim information any time through www.claimlookup.com/pfg or by calling the interactive voice response (IVR) system at the toll-free number above. If you have any questions or experience a change in your circumstances, please contact the PFG Disability and Leave Service Center Monday through Friday, 8am - 8pm ET.

22. While Plaintiff's reasonable accommodation request was still pending, Plaintiff was notified on January 9, 2020 that her accommodation Medical Leave was approved for the time period of November 29, 2019 through June 1, 2020.



Sedgwick Claims Management Services, Inc.
PO Box 14030
Lexington, KY 40512-4030

sedgwick.

January 9, 2020

Phone: (481) 694-9216, option 1
Fax: (855) 358-2148
Web: www.claimlookup.com/pfg
Email: Claiminfo@sedgwickcms.com

Robin Galbraith
1421 Maine Avenue
Hainesport, NJ 08036

RE: Performance Food Group (PFG)
Approval of Accommodation Medical Leave
Case Number: B91321069290000ATC

Hello Robin:

The PFG Disability and Leave Service Center was notified of your request to take an Accommodation Leave. Your request for Accommodation Leave was approved by PFG from 11/29/2019 through 6/1/2020.

Please be advised:
 Pay: PFG requires you to substitute or use paid time off during your Accommodation Leave. PFG will be substituting sick, vacation, or other paid time off as required per PFG's leave policies. The remainder of your leave will be unpaid.

 Return to Work/Extensions: You will be required to present a doctor's release or other certification to be restored to employment at the end of your leave. If such certification is not received, your return to work may be delayed until the certification is provided. If you are a driver, depending on the certain factors regarding your leave, you may be subject to a DOT physical exam prior to being able to return to work. Please check with your local Human Resources representative to confirm if this applies to you.

You can access your claim information any time through www.claimlookup.com/pfg or by calling the interactive voice response (IVR) system at the toll-free number above. If you have any questions or experience a change in your circumstances, please contact the PFG Disability and Leave Service Center Monday through Friday, 8am - 8pm ET.

Thank you,

Deanne J.
LOA Representative

23. After receiving the above notice, Plaintiff spoke with Deanne J. (last name unknown), a Sedgwick representative, regarding next steps. Deanne J. advised Plaintiff that Defendant PFG would be contacting her for the purpose of working remotely as an accommodation.

24. At this point, Plaintiff was hopeful her remote-work accommodation would be approved. Plaintiff believed the request was exceedingly reasonable because (i) her job tasks and assignments could be completed on a laptop, and (ii) her department already required employees

to rotate working remotely on Sundays. Defendants and their employees thus were already equipped to perform their job on a remote basis.

25. Moreover, Defendants have another location, PFG Customized, located only fifteen minutes from Plaintiff's house. Clearly Defendants are aware of this location and could have offered it to Plaintiff in the case that Plaintiff did in fact need to physically go into an office to print, scan or fax. While at the same time, it would prevent Plaintiff from exacerbating her injuries from sitting or standing too long but at the same time a reasonable accommodation. Defendants did not offer or even discuss this option with her.

26. To Plaintiff's surprise, in or around the middle of January 2020, Jessica Beacham and Defendant Wyatt called Plaintiff to inquire about her request. Plaintiff advised Ms. Beacham and Defendant Wyatt what her limitations were due to her disabilities.

27. However, two hours later, Defendant Wyatt and Ms. Beacham contacted Plaintiff to advise her that Defendant PFG denied her accommodation because the "majority" of her job could not be completed from home noting that Plaintiff would be unable to "scan checks at home."

28. Plaintiff advised her that she is not responsible for scanning checks, but even if she was, Defendant PFG uses a phone application to scan which is readily accessible from home.

29. Defendant Wyatt immediately interrupted her stating, *"We are going to fill your position, but you are not fired."*

30. When Plaintiff asked for clarification, Defendant Wyatt hastily told her *"call me once your disability ends and we will see if there is a position you qualify for available at that time."*

31. Following that conversation, Plaintiff was extremely concerned for her job security and her anxiety began to increase drastically. As a result, Plaintiff attempted to contact Defendant

PFG's corporate office regarding her denial and the ongoing retaliation she was enduring. Plaintiff left several messages but did not receive a response for *weeks.*

32. Finally, on or about February 28, 2020, Plaintiff got in contact with a Defendant Corporate Benefits employee in the Human Resources Department who, without explanation or reason, advised Plaintiff there was nothing they could do to help her.

33. After Plaintiff requested the name and contact information of Defendant Wyatt's superior, Corporate Benefits employee finally directed her to Ms. Pam Burns, Defendant Wyatt's immediate supervisor.

34. In March 2020, Plaintiff explained to Ms. Burns her need for a remote work accommodation. Plaintiff explained that her disability does not allow her to sit or stand for long periods of time, which creates a hardship for her because she has about an hour commute to work each day.

35. Rather than discuss the matter, Ms. Burns coldly told Plaintiff, *"your position can't be performed from home and providing you with this accommodation would cause an undue hardship due to the length of time that your doctor has written you out until—June."*

36. Plaintiff pleaded with Ms. Burns, explaining she could effectively and efficiently work from home. She explained that Defendant PFG already allows remote work, using Defendant PFG allowing employees to remote work on Sundays as an example. Plaintiff even offered to work every Sunday remote shift.

37. In response, Ms. Burns simply told Plaintiff they could not allow it and that *"once your short term disability from the state ends you will be separated from your job."*

38. Plaintiff knew that Defendants were targeting her because Ms. Burns had previously allowed another employee to work remotely as an accommodation without issue.

39. *On March 6, 2020 Plaintiff was advised by a Defendant PFG employee that they have filled her position and that due to the Coronavirus Pandemic, beginning March 21, 2020 all employees would be working remotely.*

40. Now more than ever, Plaintiff was confident that Defendant PFG would have no choice but to allow her remote work accommodation as the entire company was now working remote. However, Corporate Defendants did not change or revoke their denial of Plaintiff's accommodation.

41. On April 22, 2020 Plaintiff requested information regarding her employment status from Defendants because she needed it for welfare paperwork. In response, Plaintiff received an email from Defendant Wyatt with an attached letter stating that Plaintiff's current employment status was *terminated*.

42. Corporate Defendants listed Plaintiff's termination reason as *"Unable to return from leave; Company unable to reasonably accommodate requested restrictions."*

> On Apr 22, 2020, at 2:17 PM, Stella Wyatt
> <Stella.Wyatt@pfgc.com> wrote:
>
> Robin,
> Attached is the information you requested. Please let me know if you have any questions.
> Thank you,
>   Stella
>
> **Stella Wyatt, SPHR, SHRM-SCP**
> *Vice President, Human Resources*

**PERFORMANCE**
FOODSERVICE

April 22, 2020

RE: Robin Galbraith

To: Whom it may concern

Please see information requested noted below.

First day worked: 5/18/2015
Last day worked: 9/5/2019
First day of leave of absence: 9/6/2019
Current employment status: Terminated – Unable to return from leave; Company unable to reasonably accommodate requested restrictions

Sincerely yours,

*Stella Wyatt*

Stella Wyatt
Vice President of Human Resources
Performance Foodservice Roma NJ

43. In retaliation for Plaintiff requesting an accommodation for her disability and voicing her complaints about being denied same, Plaintiff was terminated.

44. At no point did Defendants engage in the interactive process with Plaintiff to reach a reasonable accommodation for her disability. Instead, Defendants denied her request without any further discussion, ignored her complaints for weeks on end and subsequently terminated her employment without advising her of same.

45. At the point of Plaintiff's termination, *the entire company* was already working remotely due to COIVD-19. There was absolutely no reason as to why Defendants, a global company with annual revenues exceeding $17,000,000,000.00, could not provide Plaintiff her remote work accommodation of *working from home*, especially now. It is clear Defendants reason for Plaintiff's termination is pretext evidenced by Defendants own actions

## COUNT ONE

## NJLAD – DISABILITY DISCRMINATION: FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

46. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

47. The conduct of Defendants as detailed above constitutes disability discrimination, specifically the failure to reasonably accommodate disabled persons and the failure to engage in the interactive process required by New Jersey law.

48. Defendants were well aware of Plaintiff's disability at all times relevant during Plaintiff's employment.

49. Throughout the course of Plaintiff's employment, Defendants failed to make accommodations for Plaintiff's disability.

50. As a direct result of Plaintiff requesting a reasonable accommodation, Defendants took retaliatory action by terminating Plaintiff from her employment.

51. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the LAD, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## COUNT TWO

## NJLAD – RETALIATION/IMPROPER REPRISAL

52. Plaintiff repeats each and every allegation set forth above as if set forth fully herein

at length.

53. Defendants took retaliatory action against Plaintiff by subjecting her to disparate treatment in the workplace.

54. Specifically, Defendants took retaliatory action against Plaintiff by subjecting her to disparate treatment, increased hostility, disparate scrutiny, and by terminating her from employment.

55. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliation in violation of the LAD pursuant to *N.J.S.A.* 10:5-12(d).

56. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorney's fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A. Reinstatement of employment and all benefits;
B. Back pay and benefits;
C. Front pay and benefits;
D. Compensatory damages;
E. Consequential damages;
F. Reinstatement;
G. Punitive damages;
H. Prejudgment interest and enhancements to off-set negative tax consequences;
I. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J. Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;
K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.   Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.   Ordering Defendants to undergo anti-discrimination training;
N.   Ordering Defendants to undergo anti-retaliation training;
O.   Ordering Defendants to undergo anti-harassment training;
P.   Ordering Defendants to undergo workplace civility training;
Q.   Ordering Defendants to undergo bystander intervention training;
R.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U.   Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
V.   Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
W.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
X.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
Y.   Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and
Z.   Such other relief as may be available and which the Court deems just and equitable.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to *Rule* 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Robin Galbraith*

By: /s/ *Matthew A. Luber*
Matthew A. Luber, Esq.

Dated:  July 8 2020


## DESIGNATION OF TRIAL COUNSEL

Pursuant to *Rule* 4:25-4, MATTHEW A. LUBER, ESQUIRE is hereby designated as trial counsel for Plaintiff.


## CERTIFICATION

Pursuant to *Rule* 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Robin Galbraith*

By: /s/ *Matthew A. Luber*
Matthew A. Luber, Esq.

Dated:  July 8, 2020